**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>*Plaintiffs,*<br><br>- against -<br><br>EAST COAST ADVANCED PLASTIC SURGERY, LLC,<br><br>*Defendant.* | Case No. 1:25-cv-01686 (PAE)<br><br>**STIPULATION AND ORDER REGARDING THE COLLECTION AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |
| EAST COAST ADVANCED PLASTIC SURGERY, LLC,<br><br>*Counterclaim-Plaintiff,*<br><br>- against -<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, *et al.,*<br><br>*Counterclaim-Defendants.* | |

**IT IS STIPULATED AND AGREED**, by and between Plaintiffs/Counter-Defendants Connecticut General Life Insurance Company ("Connecticut General Life") and Cigna Health and Life Insurance Company ("Cigna Health", and with Connecticut General Life, "Cigna"), and Defendant/Counterclaim Plaintiff East Coast Advance Plastic Surgery, LLC ("ECAPS") (each individually, a "Party", and together, the "Parties"), through their counsel, that the following protocol ("ESI Protocol") will govern the discovery of electronically stored information ("ESI") and hard copy documents in the above-captioned action ("Action"). Nothing in this ESI Protocol is intended to limit any of the Parties' rights under, or prevent any Party from asserting any

objection to production consistent with, the Federal Rules of Civil Procedure, the Local Civil Rules for the Southern District of New York, and/or any other applicable law.

**1.      COOPERATION**

The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1).

**2.      IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

Within (30) days of Entry of this Order, each Party shall provide to all other Parties a list of ESI custodians from whom ESI will be collected and a good-faith explanation describing how the reasonable subset of ESI custodians was determined. Within (14) days of service of this list, the Parties shall meet and confer about the list of custodians, data sources likely to contain responsive information, and the relevant time period for discovery in this action.  Prior to production of any ESI, the parties will reach an agreement on the set of custodians whose data will be searched.  Following agreement on a list of custodians, each Party will begin collecting potentially responsive documents, ESI, and information in the possession, custody, or control of each custodian.  The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and to meet and confer regarding such request. If the Parties cannot agree to custodians, and are unable to resolve any disputes, any Party may file an appropriate motion for determination by the Court. During the pendency of any such motion, the producing Party's production obligation with respect to any disputed custodians only will be stayed.

### 3.    SEARCH METHODOLOGIES

The Parties shall take reasonable efforts to identify and collect any Documents and ESI responsive to the Parties' discovery requests in this Action from all sources of potentially responsive, non-duplicative information, including, but not limited to, servers, network drives, and shared drives, that are within the Parties' possession, custody, or control.  The Parties shall use best efforts to collect ESI in a forensically sound manner that does not alter metadata or other file attributes.

The Parties shall adopt reasonable and proportionate methodologies to search, cull, review, and produce ESI as required under applicable legal standards. The Parties agree that each Party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI, including the use of keyword search terms and/or the use of technology assisted review ("TAR"), provided that the Party will promptly disclose (i) the TAR tool or service and (ii) any search terms being used. The Parties agree to disclose search terms used to cull potentially responsive ESI and shall confer regarding "hit counts" as to search terms, culling procedures, methodologies, and technologies used to identify, cull, review, or otherwise determine the population of documents produced to the Receiving Party. In particular, the parties shall confer and attempt to agree on any search terms, other objective delimiters (such as email domains), and/or technology-assisted review technologies to be used as a means of limiting the volume of documents and ESI to be reviewed for responsiveness. The Parties may meet and confer regarding other methods to cull and limit the volume of documents and ESI. The Parties agree to meet and confer in good faith regarding any potential disputes over their respective methodologies.

If the Parties cannot agree to a TAR protocol or keywords to be used or sources of ESI to be searched, and are unable to resolve any disputes, any Party may file an appropriate motion for

3

determination by the Court. During the pendency of any such motion, the producing Party's production obligation with respect to any disputed portion of any TAR protocol or keywords to be used or sources of ESI to be searched only will be stayed.

## 4.    SYSTEM FILES

The parties may filter out common system files using the National Software Reference Library NIST hash set list. The parties may suppress container files (.ZIP, .PST, .RAR) that do not reflect substantive information.

## 5.    DE-DUPLICATION

The parties may globally deduplicate (i.e. within and across custodians) using commercially acceptable e-discovery software that utilizes either MD5 or SHA1 cryptographic hash values to de-duplicate ESI at the document family or parent level. The identity of the primary custodian and other custodians that possessed all de-duplicated items at the time of production shall be provided in the "All Custodian" field of the single record that is produced. The parties may also de-duplicate emails to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of an email chain ("email thread suppression"). If a party elects to utilize email thread suppression, it shall use commercially acceptable e-discovery software.

## 6.    DATABASES AND STRUCTURED DATA

The Parties may produce structured data contained in databases by generating reports in a reasonably usable format (for example, in Excel or .CSV format). To the extent available and reasonably accessible, the first line in the report will show the column headers for each field of data included in the report.

7. **PRODUCTION FORMAT FOR ESI**

    a. The Parties agree to produce documents in single-page, Group IV TIFF image file format with a minimum resolution of 300 dpi. The parties shall provide DAT and .OPT load files with standard delimiters. The Parties shall meet and confer regarding alternate production formats for documents that cannot be reasonably produced in the agreed format.

    b. The Parties shall provide the metadata fields set out in Appendix 1 in the .DAT data load file to the extent they exist and are reasonably accessible. The first line in each .DAT file shall be the header containing the agreed-upon metadata field names, and each subsequent line shall contain the fielded data for each document. The Parties will take reasonable steps to preserve, to the extent they have a value, all Metadata associated with ESI even if such Metadata is not specified above for production. A Party may request additional metadata fields, not captured in Appendix 1, for good cause. The Parties are not obligated to populate manually any of these fields if such fields cannot be extracted from the ESI. Nothing in this paragraph shall be construed to obligate a party to (i) create new Metadata that is not already in existence at the time of collection of the ESI, (ii) produce Metadata that is privileged or attorney work product (although such withheld metadata must be included in privilege log), or (iii) produce Metadata that is protected from disclosure by statute or regulation.

    c. The Parties shall produce Excel files, .CSV files, audio/visual files, and other documents that are unable to be converted to .tiff format in a reasonably useable manner in native format ("Native Files"). Each Native File shall be produced with

a corresponding slip-sheet TIFF placeholder image file, which will contain burned in bates numbers, confidentiality designations and language indicating that the document is being produced as a Native File. Native Files shall be named with the beginning Bates number that is assigned to that specific record in the production. Native Files shall be produced with extracted text and applicable metadata fields as set forth in Appendix 1. For Native Files that contain redactions, the Parties may either apply the redactions to the native file or produce TIFF image files with burned-in redactions in lieu of a Native File and TIFF placeholder image. The Parties agree that to the extent any Party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the producing party shall respond reasonably and in good faith to any such request. Other than as specifically set forth in this paragraph, a producing party need not produce documents in native format.

d.  When ESI is produced, the producing Party will maintain a separate file as a Native File and, in that separate file, it will not modify the Native File in a manner that materially changes the File and the Metadata.

e.  The Parties shall provide a text file along with its corresponding TIFF image file(s) and metadata. The text shall be extracted directly from the native file. Optical Character Recognition ("OCR") can be provided in lieu of extracted text for redacted documents or documents without extracted text. Each text file shall be named according to the beginning Bates number that is assigned to that specific record in the production.

f.  The Parties shall produce color images as 300 dpi single-page JPEG files. The Parties are not required to produce documents in color in the first instance. If the receiving party has good cause to make reasonable requests for production of certain documents in color, the receiving party may do so by providing: (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The producing party shall not unreasonably deny such requests.

## 8.    PRODUCTION FORMAT FOR HARD COPY

Documents that exist in hard copy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. The Parties shall meet and confer regarding alternate production formats for documents that cannot be reasonably produced in the agreed format.

## 9.    ATTACHMENTS

Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments

should be consecutively produced with their parent—even if copies of attachments have been produced as part of a different family group—unless the attachment itself is determined to be privileged or exceptioned during processing.

## 10.    NON-SUBSTANTIVE EMBEDDED OBJECTS

The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a producing party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents).

## 11.    ARCHIVED MATERIALS

Absent a showing by the requesting Party of circumstances whereby the need for such ESI substantially outweighs the burden associated with recovering it and that no other source for such ESI is otherwise available, the Parties shall not be required to search Back-Up Tapes and Data or other Back-Up, archived, or disaster recovery systems.  To the extent either Party determines that responsive information is only contained on Back-Up Tapes and Data, the parties will meet and confer in good faith to exchange information about the Back-Up Tapes and Data in their possession, when such Back-Up Tapes and Data were created (and/or most recently re-written), and what potentially relevant information they contain. For purposes of this Section, "Back-Up Tapes and Data" means data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

8

**12.    PRESERVATION NOT REQUIRED FOR NOT REASONABLY ACCESSIBLE ESI.**

The Parties agree that the Parties need not search for, or produce, in the first instance, (a) deleted computer files, whether fragmented or whole, (b) temporary or cache files, including internet history, web browser cache and cookie files, and (c) server, system, or network logs. The Parties reserve the right to seek discovery of the foregoing materials in the event such files and logs become an issue relating to the Parties' claims or defenses.

**13.    TIME-ZONE**

The parties shall normalize ESI produced in this case to the Universal Time Code or "UTC," unless the producing party can show good cause for modifying this requirement.

**14.    PASSWORDS**

The Parties will use reasonable efforts to remove passwords or other security protection from potentially responsive ESI documents.

**15.    PROCESSING EXCEPTIONS**

The Parties will use reasonable efforts to address processing exceptions.

**16.    BATES NUMBERING**

The Parties shall number documents with consistent padding (e.g., with a consistent number of leading zeros) across the entire production and sequential within a given document. The numbering convention shall be consistent throughout rolling productions. There shall be no spaces between the prefix and numeric value. No special characters shall be used other than underscores and dashes. If suffixes are used, they shall be in dot notation (e.g., BATES000000001.001). Bates numbers shall be branded in the lower right-hand corner of all TIFF images and shall not obscure any part of the underlying content.

17.    **CONFIDENTIALITY**

Confidentiality designations shall be branded in the lower left-hand corner of TIFF images and shall not obscure any part of the underlying content.

18.    **REDACTIONS**

A Producing Party may redact information subject to the attorney-client privilege or work product protection, personal identifying information, and any redactions permitted under the applicable Protective Order. The Producing Party shall indicate the type of redaction on the face of the redaction (*e.g.*, "AC Privilege," "PII"). Redactions for privilege must also be reflected in metadata in accordance with the required field in Appendix 1.

19.    **PRODUCTION TRANSMITTAL**

Productions will be delivered via secure electronic file transfer system or other method agreed to by the parties. The producing Party shall encrypt all production data. Such encryption should only be implemented in a manner that would not preclude the reasonable use of ESI. The producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

20.    **THIRD-PARTY DOCUMENTS**

A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena and state that (1) the subpoenaed Non-Party should produce documents in response to the subpoena to all Parties; and (2) the Parties to this Litigation have requested that Non-Parties produce documents in accordance with the specifications set forth herein. If the subpoenaed Non-Party produces documents to the Issuing Party but does not produce those documents to other Parties, the Issuing Party shall produce such documents to those other Parties within fourteen (14) business days of receiving the documents, except where the documents are to

be used in a deposition, in which case the Issuing Party shall produce such documents to all other Parties no later than three business (3) days prior to the deposition, or as soon as reasonably practicable if such production occurs thereafter. Nothing in this ESI Protocol is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Non-Parties to object to a subpoena. If the Non-Party production is not bates-stamped, the Parties will meet and confer on designating the documents with unique bates numbers.

21.    **PROTECTIVE ORDER**

All productions are subject to any Protective Order entered by the Court in this case. Pursuant to the applicable rules and any Protective Order, production of privileged or work-product protected information is not a waiver in the pending case or in any other federal or state proceeding.

22.    **NON-WAIVER OF OBJECTIONS**

Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of any information or documents.

23.    **INADVERTENT DISCLOSURES AND CLAWBACKS**

The inadvertent disclosure to another Party of any document which is subject to a legitimate claim that the document should have been withheld from disclosure as a privileged attorney/client communication or attorney work product shall not constitute a waiver of any privilege or otherwise affect the right to withhold it from production as privileged or work product. If a request is made in good faith to return any such allegedly privileged or work product document that was

11

inadvertently disclosed, the Party that received the document shall delete it and return all hard copies consistent with the Protective Order entered in this matter.

## 24.    PRIVILEGE LOGS

The producing party will provide a log of documents withheld for privilege containing the following document metadata and information to the extent reasonably available: Document Number, Custodian, Author/Sender, Recipient, CC Recipient, BCC Recipient, Date, Email Subject, File Name, and Basis for Withholding (*e.g.*, Attorney-Client Communication, Work Product). The parties will exchange initial privilege logs no later than 21 days following substantial completion of document discovery and supplement their privilege logs as necessary thereafter.

If the requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks which this information. Within seven (7) days of such a request, the producing Party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer within three (3) business days to try to reach a mutually agreeable solution. If they cannot agree, the Parties may make an appropriate motion to the Court.

A single document containing multiple e-mails in an e-mail chain may be listed on the privilege log as a single entry containing the information from the most recent email in the chain.

The Parties agree that the following categories of Documents and ESI need not be identified on a privilege log: (i) all communications and attorney work product exchanged between counsel (including in-house counsel acting in such capacity and counsel of record in this Action) and their respective clients since October 9, 2024; and (ii) to the extent not inconsistent with Second Circuit and/or Southern District of New York authority, all communications between an

in-house attorney acting in such capacity or counsel of record and their respective clients concerning scheduling, logistical, and/or strictly ministerial matters, so long as any portions of such communications that do not relate to scheduling, logistical, and/or strictly ministerial matters are either produced or identified on a privilege log if any privilege is claimed.

### 25.    MODIFICATION

This ESI Protocol may be modified by agreement of the affected Parties or by the Court. Nothing in this ESI Protocol waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that the Parties must first meet and confer and use reasonable best efforts to negotiate an exception from or modification to this ESI Protocol prior to seeking relief from the Court.

### 26.    RESERVATION OF RIGHTS

The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**SO STIPULATED AND AGREED.**

Dated: New York, New York
       January 23, 2026

**MCDERMOTT WILL & SCHULTE LLP**

By: */s/ Richard W. Nicholson, Jr.*
Joshua B. Simon
Warren Haskel
Richard W. Nicholson, Jr.
Chelsea Cosillos
Fabiola Vega
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
jsimon@mwe.com
whaskel@mwe.com

**LAW OFFICES OF MICHAEL B. WOLK, P.C.**

By:    */s/ Michael B. Wolk*
Michael B. Wolk
155 East 55th Street
Suite 300B
New York, New York 10022
Tel: (917) 238-0576
Email: Michael.Wolk@wolkgroup.com

-and-

**SCHLAM STONE & DOLAN LLP**

13

rnicholson@mwe.com
ccosillos@mwe.com
fvega@mwe.com

-and-

Edward T. Kang
Ryan Martin-Patterson
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3728
Facsimile: (202) 239-3333
Edward.Kang@alston.com
Ryan.Martin-Patterson@alston.com

*Attorneys for Plaintiffs and Counterclaim-*
*Defendants Cigna Health and Life*
*Insurance Company and Connecticut*
*General Life Insurance Company*

**By:**___ /s/ *Elizabeth Wolstein*_____
Elizabeth Wolstein
Samuel L. Butt
David J. Goldsmith
26 Broadway
New York, New York 10004
Tel.: (212) 344-5400
Fax: (212) 344-7677
Email: ewolstein@schlamstone.com
Email: sbutt@schlamstone.com
Email: dgoldsmith@schlamstone.com

*Attorneys for Defendant and*
*Counterclaim-Plaintiff East Coast*
*Advanced Plastic Surgery, LLC*

**SO ORDERED**.

Paul A. Engelmayer
_____
Hon. Paul A. Engelmayer

Date: January 27, 2026
New York, New York

14

**Appendix 1: ESI Metadata and Coding Fields**

| Field Name | Description of Field |
|---|---|
| BegBates | Beginning document number |
| EndBates | Ending document number |
| BegAttach | Beginning document number of family unit |
| EndAttach | Ending document number of family unit |
| All Custodians | All Custodians (including the identity of other custodians for deduplicated records). Multiple custodians in the "All Custodian" field shall be separated by a semicolon. |
| Author | Author field extracted from the metadata of the native file |
| From | Sender of the e-mail message |
| To | Recipient(s) of the e-mail message (To) |
| CC | Recipient(s) of "carbon copies" of the e-mail message |
| BCC | Recipient(s) of "blind carbon copies" of the e-mail message |
| Email Subject | Email Subject |
| Sent Date/Time | Date and time the e-mail message was sent |
| File Date | Date and time the file was created |
| File Date Modified | Date and time the file was last modified |
| File Type | Email, Attachment, E-File, Scanned Paper |
| File Extension | File extension of document (.msg, .doc, .xls, etc.) |
| File Name | Name of original file |
| Hash Value | MD5 or SHA-1 Hash Value |
| Modified Date/Time | For non-emails (produced in "MM/DD/YYYY HH:MM AM or PM" format) |
| Confidentiality | Confidentiality designations pursuant to any Protective Order |
| Redacted | Contains Redactions (Yes/No) |
| Native File Path | Relative file path to each native file in the production volume |
| Text File Path | The path to the corresponding OCR or extracted text file included with a production volume. |