UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONNECTICUT GENERAL LIFE INSURANCE CO. *et al.*,

Plaintiffs,

-v-

EAST COAST ADVANCED PLASTIC SURGERY, LLC,

Defendant.

25 Civ. 1686 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to dismiss a counterclaim brought in an insurance fraud dispute.

On October 9, 2024, plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna"), a health insurer and claims administrator, brought this case against East Coast Advanced Plastic Surgery ("ECAPS"), an out-of-network health care provider. Cigna centrally claimed that ECAPS engaged in fraudulent billing practices that resulted in Cigna overpaying for certain ECAPS services provided to patients (the "Cigna patients") enrolled in Cigna-insured health plans and self-funded employer health plans ("SFPs"). ECAPS countersued, alleging that Cigna failed to pay what it owed for those services. On August 24, 2025, the Court resolved parallel motions to dismiss, sustaining most of Cigna's claims and dismissing ECAPS' claims under Federal Rule of Civil Procedure 12(b)(6).

On September 3, 2025, ECAPS answered Cigna's Complaint, and brought a counterclaim under the No Surprises Act ("NSA"), 29 U.S.C. § 1185e, against Cigna, more than 25 named

1

SFPs, and "John Doe Cigna Self-Funded Plans 1–2000" (together, the "counterclaim defendants"). It alleges that the counterclaim defendants violated the NSA by failing to pay ECAPS for services that ECAPS provided to Cigna patients, and by demanding that ECAPS engage in balance billing—a prohibited practice in which providers charge patients more than their cost-sharing amount. The counterclaim seeks: (1) a judgment declaring that the counterclaim defendants violated the NSA's statutory payment mandate and balance billing prohibition; (2) a permanent injunction prohibiting the counterclaim defendants from violating those statutory provisions; and (3) reimbursement of the amounts that the counterclaim defendants purportedly owed ECAPS for the services provided to Cigna patients.

Currently before the Court are motions to dismiss the counterclaim by Cigna and two SFP counterclaim defendants. For the reasons that follow, the Court grants the motions.

## I.    Background[1]

### A.    The Parties

ECAPS is a New Jersey based medical practice that specializes in post-mastectomy breast reconstruction surgery. Dkt. 68 ("Answer") ¶ 23.

Connecticut General Life Insurance Company, and its wholly owned subsidiary Cigna Health and Life Insurance Company, are health insurance companies with principal places of business in Connecticut. *Id.* ¶¶ 13–14. Salient here, they offer employee health claim

---

[1] The Court draws the facts in this decision principally from Cigna's Complaint, Dkt. 1 ("Compl."); ECAPS' Answer, Dkt. 68 ("Answer"); documents incorporated into or integral to those filings; and, as background, the Court's August 14, 2025 Opinion resolving the earlier motions to dismiss, Dkt. 58 ("MTD Decision"). For purposes of resolving the motion to dismiss the counterclaim, the Court accepts all factual allegations in the Answer as true, drawing all reasonable inferences in ECAPS' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The facts recited here focus on those relevant to the counterclaim.

administration services to commercial employers and their employees in New York, New Jersey, and other states. *Id.*

Structural Group, Inc. Health & Welfare Benefits Plan ("Structural Group") and Red Hat, Inc. Welfare Benefits and Health FSA Plan ("Red Hat") are two of many SFPs for which Cigna serves as the claims administrator. *Id.* ¶ 15.

### B.    Factual Background to the Counterclaim

The Court incorporates by reference the factual background in its earlier decision, Dkt. 58 ("MTD Decision"), which describes Cigna's responsibilities as claims administrator and fiduciary for members who subscribe to its plans; the nature of out-of-network health providers; the practice of fee forgiving; the agreement governing the relationship between ECAPS and Cigna; and the alleged breaches of that agreement. MTD Decision at 3–11. The Court here recaps background salient to the counterclaim and summarizes the Answer's additional allegations.

### 1.    The MPI Agreement

On May 15, 2012, ECAPS entered into a written agreement (the "MPI Agreement") with MultiPlan, Inc., a health insurance intermediary that connects out-of-network medical providers such as ECAPS with claims administrators such as Cigna. *Id.* at 3, 6. The agreement stated, in sum, that ECAPS would provide medical services to participants and beneficiaries covered by Cigna-administered plans, and that, in exchange, Cigna would pay ECAPS a rate of 85% of ECAPS' billed charges. *Id.* at 6–7. ECAPS was to submit its claims for payment directly to Cigna within 180 days of rendering healthcare services. *Id.* at 7. The MPI Agreement stated that ECAPS was not required to bill or collect from a Cigna plan member until ECAPS received an explanation of benefits ("EOB") from Cigna stating patients' cost-sharing amounts. *Id.* at 10.

### 2.    Alleged Violations by the Counterclaim Defendants

Since January 1, 2022, ECAPS has provided its specialized breast reconstruction services to hundreds of Cigna patients.  Answer ¶ 43.  Consistent with the MPI Agreement, ECAPS and its doctors have routinely submitted their claims for payment for such services to Cigna.  *Id.* ¶ 44.  ECAPS alleges that Cigna, acting on behalf of the SFPs, violated the terms of that agreement—and of the NSA—in at least three ways.

First, Cigna allegedly failed to provide ECAPS with the information necessary for ECAPS to determine the amount owed by Cigna patients.  *Id.* ¶ 45.  ECAPS, as an out-of-network provider, was not party to any Cigna SFPs; it thus relied on Cigna to provide cost-sharing information for its patients.  *Id.*  But Cigna often refused to provide ECAPS with such information, or provided EOBs that were inaccurate.  *Id.* ¶¶ 45–46.  For example, Cigna provided EOBs that falsely stated that a particular discount was applied that resulted in a patient not owing any cost-sharing amount, or that were inconsistent with the EOBs it provided to the SFPs.  *Id.* ¶¶ 46–47.  ECAPS nevertheless managed, in many cases, to independently ascertain accurate cost-sharing amounts, which it then collected from patients.  *Id.* ¶ 48.

Second, Cigna allegedly failed to timely pay ECAPS the 85% contract rate due under the MPI Agreement.  *Id.* ¶ 49.  In some instances, Cigna paid nothing to ECAPS for services provided to Cigna patients.  *Id.* ¶ 75.  In others, Cigna paid a small fraction of the amount it owed.  *Id.*  ECAPS has filed numerous appeals with Cigna in an effort to obtain such payments.  *Id.* ¶ 50.[2]

---

[2] In the process of filing these appeals, ECAPS learned that many of Cigna's underpayments were the result of Cigna applying false discounts to ECAPS' claims for treatments provided to Cigna patients.  Answer ¶ 50.

Third, Cigna allegedly forced ECAPS to engage in balance billing, a practice in which an out-of-network provider bills patients more than their cost-sharing amount. *Id.* ¶¶ 5–6. On April 14, 2023, Cigna sent a letter to ECAPS on behalf of the SFPs. *Id.* ¶ 52; *see* Dkt. 68-1 ("Payment Letter"). Cigna stated that it had reviewed ECAPS' billing and collection records and found that "ECAPS does not consistently bill Cigna customers their full, out-of-network cost share responsibility."[3] Payment Letter at 2. It stated that this "is a violation of the terms of our Cigna customer benefit plan agreements and renders your charges not covered." *Id.* Cigna directed ECAPS to refund Cigna $8,564,795.58—the damages it calculated for claims submitted by ECAPS between January 1, 2019 and March 24, 2023. *Id.* at 3. It also advised that ECAPS' future claims would be denied "until we can verify that the affected customers have paid their applicable cost share and balance amounts per their benefit agreement." *Id.* at 4.

In response to the Payment Letter, ECAPS disputed Cigna's claim that ECAPS had failed to collect cost-sharing amounts from patients. Answer ¶ 59. ECAPS also stated that the letter improperly demanded that ECAPS engage in balance billing by collecting from patients the difference between the amount billed by ECAPS and the lesser amount paid by Cigna. *Id.*[4]

ECAPS continued to provide medical treatments to Cigna patients and to submit claims to Cigna. *Id.* ¶ 60. After April 23, 2023, however, Cigna ceased payments to ECAPS for such services. *Id.*

---

[3] This practice is known as fee forgiving. It occurs when an out-of-network provider waives, reduces, or fails to attempt to collect the required cost-sharing amount from a patient. MTD Decision at 5. It drives up medical costs by diminishing the patient's incentive to seek in-network providers. *Id.*

[4] The Answer also alleges that, contrary to the suggestion in the Payment Letter, ECAPS, as an out-of-network provider, was not bound by the terms of the Cigna SFPs, including the payment conditions stated in those agreements. Answer ¶¶ 53, 56, 58.

### 3.    The Counterclaim

The counterclaim alleges two violations of the NSA.

First, it alleges that the counterclaim defendants violated the NSA's payment mandate, which provides that where, as here, an out-of-network provider such as ECAPS delivers non-emergency healthcare services to a patient at a participating facility, the health plan "shall pay a total plan or coverage payment directly . . . to such provider furnishing such items and services to such participant or beneficiary." 29 U.S.C. § 1185e(b)(1)(D).[5]  Such payment is "equal to the amount by which the out-of-network rate . . . exceeds the cost-sharing amount imposed under the plan or coverage." *Id.*  It must be made or denied "not later than 30 calendar days after the bill for such items or services is transmitted" by the provider. *Id.* § 1185e(b)(1)(C).  ECAPS claims that the counterclaim defendants failed to pay the contractually agreed-upon rate of 85%, and to do so within 30 days of ECAPS submitting its claims to Cigna.  Answer ¶ 74.

Second, the counterclaim alleges that the counterclaim defendants violated the NSA's prohibition on balance billing, which provides that a group health plan "shall not impose on such participant or beneficiary a cost-sharing requirement for such items and services so furnished that is greater than the cost-sharing requirement that would apply under such plan . . . had such items or services been furnished by a participating provider." 29 U.S.C. § 1185e(b)(1)(A).  In other words, where Cigna patients receive treatments at participating healthcare facilities by out-of-network providers such as ECAPS, those patients cannot be made to pay more for such services than if they had received them from in-network providers.  ECAPS claims that Cigna, in requiring that ECAPS collect the "full, out-of-network cost share," Payment Letter at 3, from

---

[5] As alleged, this statutory provision imposes an express obligation on "the plan"—here, the SFPs—but Cigna is also obligated by virtue of its role as the SFPs' agent and fiduciary.  Answer ¶ 68.

Cigna patients in order to receive Cigna's payment for such services, demanded that ECAPS engage in balance billing, in violation of the NSA. Answer ¶¶ 79–81, 84.

### C.    Relevant Procedural History

On October 9, 2024, Cigna initiated this action. Dkt. 1 ("Compl."). Cigna centrally claimed that ECAPS engaged in fraudulent billing practices that resulted in Cigna overpaying by more than $8 million for certain ECAPS services. It brought claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), and various state laws.

On October 10, 2024, ECAPS countersued (the "ECAPS Action"). No. 25 Civ. 255 at Dkt. 1 ("ECAPS' Complaint" or the "EC"). It claimed that Cigna failed to pay what it owed for certain services provided to Cigna patients. Salient here, ECAPS brought a claim under the NSA, seeking a declaratory judgment that would, *inter alia*, (1) enforce an independent dispute resolution ("IDR") determination awarding ECAPS $3 million against Cigna, and (2) declare Cigna violated the NSA's payment mandate. *Id.* at 55.

On August 14, 2025, the Court resolved parallel motions to dismiss in both actions. Dkt. 58. The Court largely denied ECAPS' motion to dismiss Cigna's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[6] *Id.* at 18–28. The Court granted Cigna's motion to dismiss ECAPS' Complaint. *Id.* at 28–36. As to the NSA claim, the Court declined

---

[6] The Court granted ECAPS' motion to dismiss only as to state-law claims that Cigna did not defend in its opposition papers, and as to the Declaratory Judgment Act claim, because such does not provide an independent cause of action. MTD Decision at 27–28.

On August 27, 2025, ECAPS moved for certification of an interlocutory appeal of the MTD Decision's holding that the Court has subject matter jurisdiction over Cigna's claims. Dkt. 64. On November 12, 2025, the Court denied that motion. Dkt. 98.

"to recognize an implied right of action within the NSA," consistent with "the substantial majority of courts to consider the issue." *Id.* at 35. The Court dismissed the ECAPS Action. *Id.* at 41. On September 11, 2025, ECAPS appealed the MTD Decision's dismissal of ECAPS' Complaint. Dkt. 51.

On September 3, 2025, ECAPS filed its Answer in this action, bringing the counterclaim against Cigna and the SFPs for violating the NSA. Dkt. 68 ("Answer"). The counterclaim seeks "equitable relief" in the form of reimbursement for the services provided to Cigna patients and an injunction prohibiting future statutory violations by the counterclaim defendants. *Id.* at 43–44.

On October 8, 2025, Cigna moved to dismiss the counterclaim. Dkt. 79 ("Mot.").[7] On October 21 and October 23, 2025, Structural Group and Red Hat, respectively, also moved to dismiss. Dkts. 85, 90.[8] On October 29, 2025, ECAPS opposed these motions. Dkts. 93 ("Opp'n"), 94, 96. On November 12, 2025, Cigna replied, Dkt. 99 ("Reply"), as did Structural

---

[7] On October 10, 2025, the Court issued an amend-or-oppose order, directing ECAPS to file any amended counterclaims by October 29, 2025 or, in the alternative, to serve any opposition to the motion to dismiss by the same date. Dkt. 80. On October 16, 2025, ECAPS filed a letter seeking clarification as to whether the deadline to file amended counterclaims applied to substitutions of the John Doe counterclaim defendants with named health plans. Dkt. 81. On October 24, 2025, the Court stayed the deadline for ECAPS to add more health plan defendants and for counterclaim defendants other than Cigna to respond to the counterclaim. Dkt. 92. It found that a stay would save time and resources because, in the event that the Court were to grant Cigna's motion to dismiss, it would have "spared the many counterclaim defendants the time and expense of separately responding to ECAPS's counterclaim," and spared ECAPS the "resource-intensive step[]" of conducting discovery as to the identities of dozens of SFPs not named in the Answer. *Id.* at 2.

[8] The SFPs' motions to dismiss stated that Structural Group and Red Hat "join[] Cigna's motion to dismiss ECAPS' Counterclaim for the reasons set forth in Cigna's memorandum of law." Dkt. 86 at 2; Dkt. 91 at 2. Accordingly, the Court's analysis focuses on Cigna's motion.

Group and Red Hat, Dkt. 100. On December 8, 2025, with leave of the Court, ECAPS filed a sur-reply. Dkt. 107 ("Sur-Reply").

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving a motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. These same standards apply to motions to dismiss counterclaims. *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18 Civ. 5075, 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020).

## III.    Discussion

Cigna makes two arguments for dismissal of the counterclaim. First, Cigna argues that the counterclaim is barred by *res judicata*. Mot. at 1. Second, it argues that the counterclaim is improper because the NSA does not create a private right of action. *Id.* The Court considers each in turn.

9

### A.    Whether the Counterclaim Is Barred by *Res Judicata*

A party moving to dismiss under Rule 12(b)(6) on *res judicata* grounds must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citation omitted).

Cigna argues that *res judicata* bars the counterclaim because: (1) the MTD Decision, which dismissed ECAPS' Complaint without prejudice, was an adjudication on the merits; (2) ECAPS, the counterclaim plaintiff, was the plaintiff in the prior action against Cigna; and (3) the counterclaim was raised in the prior action insofar as it is based on Cigna's alleged failure to pay ECAPS, and could have been raised in the prior action insofar as it relates to Cigna's alleged demand that ECAPS engage in balance billing. Mot. at 6–7. ECAPS counters that *res judicata* does not apply because a Rule 12(b)(6) dismissal without prejudice does not constitute an adjudication on the merits. Opp'n at 11.

ECAPS is correct. The MTD Decision granted Cigna's motion to dismiss ECAPS' Complaint in its entirety and stated that such "dismissal is without prejudice." MTD Decision at 41. "It is well established that a dismissal without prejudice has no *res judicata* effect on a subsequent claim." *Camarano v. Irvin*, 98 F.3d 44, 47 (2d Cir. 1996) (cleaned up); *see also Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("The primary meaning of 'dismissal without prejudice' . . . is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim."). Accordingly, the first requirement is not satisfied, and *res judicata* does not bar the counterclaim.

Cigna makes two arguments to the contrary. Neither is availing.

10

First, Cigna argues that the Court's statement—that the EC's dismissal was without prejudice—"seemed to have applied to the dismissal of state-law claims," over which the Court declined to exercise supplemental jurisdiction, not the other claims in ECAPS' Complaint. Reply at 2. But the Court expressly stated in the MTD Decision: "*Each* dismissal is without prejudice." MTD Decision at 41 (emphasis added). Cigna fails to explain how this decretal language could be read to apply only to the EC's state-law claims.

Second, Cigna argues that, because ECAPS appealed the MTD Decision instead of seeking leave to amend the EC, the dismissal without prejudice became one with prejudice, such that *res judicata* applies. Reply at 2–3. Cigna cites four out-of-circuit cases holding that, where a prior action was dismissed without prejudice and the plaintiff declined an opportunity to amend the complaint, an appeal of that dismissal converts it to a dismissal with prejudice. *See Pie Dev., L.L.C. v. Pie Carrier Holdings, Inc.*, 128 F.4th 657 (5th Cir. 2025); *Save Bull Trout v. Williams*, 51 F.4th 1101 (9th Cir. 2022); *Smith v. Sec'y of Veterans Affs.*, 808 F. App'x 852 (11th Cir. 2020); *Duffner v. City of St. Peters*, 930 F.3d 973 (8th Cir. 2019). Those cases do not bind this Court. In any event, they do not support treating the earlier dismissal without prejudice as a final adjudication on the merits.

A dismissal without prejudice is distinct from a grant of leave to amend.[9] In the Second Circuit, the terms "with prejudice" or "without prejudice" refer to determinations "as to the *res judicata* effect of a dismissal." *Elfenbein v. Gulf & W. Indus., Inc.*, 590 F.2d 445, 449 (2d

---

[9] In addition, a final judgment for *res judicata* purposes is distinct from a final judgment for the purposes of appeal. *See Rinieri v. News Syndicate Co.*, 385 F.2d 818, 821 (2d Cir. 1967) ("Although a dismissal without prejudice permits a new action . . . without regard to *res judicata* principles, the order of dismissal, nevertheless, is a final order from which an appeal lies." (cleaned up)). Accordingly, Cigna's argument—that "by taking the appeal and forgoing amendment, ECAPS has agreed the Court's judgment was a final judgment and preclusion should apply," Reply at n.2—is without merit.

Cir. 1978) (cleaned up), *abrogated by Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229 (2d Cir. 2015). "These terms are not substitutes for clear indications as to whether repleading will be allowed." *Id.* Where a district court seeks to give plaintiffs an opportunity to amend their complaint, its order must "clearly grant[] leave to replead." *Id.* at 450.

In the MTD Decision, the Court dismissed the EC without prejudice but did not grant ECAPS leave to amend. This case is therefore afield from the out-of-circuit cases on which Cigna relies, in which plaintiffs were expressly granted leave to amend but instead opted to appeal the dismissal of their claims. *See, e.g., Pie Dev.*, 128 F.4th at 660 (district court dismissed claims without prejudice and ordered plaintiff to serve amended complaint within 30 days of order; plaintiff "declined the opportunity to amend its complaint and instead appealed"); *Smith v. Wilkie*, 2019 WL 13440555, at *1 (M.D. Fla. July 25, 2019) (district court dismissed claims without prejudice and "permitted Plaintiff to file an amended complaint" but plaintiff "instead appealed"), *aff'd sub nom. Smith v. Sec'y of Veterans Affs.*, 808 F. App'x 852 (11th Cir. 2020); *Save Bull Trout*, 51 F.4th at 1105 (district court dismissed claims but granted plaintiff "leave to amend"; plaintiff "declined" and "then appealed").[10] Those courts were concerned that the efficiency goals of *res judicata* would be undermined if a plaintiff could "(1) decline the opportunity to amend their complaint; (2) appeal; (3) if appeal is lost, get another shot at amending the complaint because the district court order was without prejudice; and (4) appeal yet again." *Pie Dev.*, 128 F.4th at 663. That concern does not apply here, because ECAPS did not pass up an opportunity to amend.

---

[10] *Duffner* is distinguishable from this case for a different reason: it was decided under Missouri law, which bars the refiling of claims dismissed without prejudice unless based on new factual allegations. Sur-Reply at 2 n.1 (citing *Duffner*, 930 F.3d at 976).

Accordingly, the MTD Decision did not constitute a final adjudication on the merits. *Res judicata* does not bar the Court from considering the counterclaim. *See, e.g., Maurice Silvera, Inc. v. Nat'l Ctr. for Emp. of the Disabled*, No. 2 Civ. 6223, 2003 WL 262508, at *2 (S.D.N.Y. Feb. 6, 2003) (no *res judicata* bar where prior Rule 12 dismissal was without prejudice); *Deitrick v. Cibolo Cap. Partners I, LLC*, No. 17 Civ. 4165, 2018 WL 1603869, at *5 (S.D.N.Y. Mar. 28, 2018) (similar); *Gashi v. County of Westchester*, No. 2 Civ. 6934, 2005 WL 195517, at *7 (S.D.N.Y. Jan. 27, 2005) (similar).

## B.    Whether the NSA Permits Claims for Equitable Relief

Cigna argues that the counterclaim should be dismissed because, as this Court held in the MTD Decision, the NSA does not give rise to a private right of action. Mot. at 8 (citing MTD Decision at 34–36). It does not matter, Cigna argues, that the Answer seeks equitable relief, because there is no "free-floating private right of action in equity for a non-existent statutory right of action." *Id.* at 9. ECAPS counters that its counterclaim seeks "traditional equitable relief," and that "the absence of an express or implied private right of action does not preclude a plaintiff from asserting a claim for equitable relief for violation of the statute." Opp'n at 13, 24.

Cigna is correct.

"[T]he question of what remedies are available under a statute that provides a private right of action is 'analytically distinct' from the issue of whether such a right exists in the first place." *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 65–66 (1992) (quoting *Davis v. Passman*, 442 U.S. 228, 239 (1979)). Thus, in assessing a claim brought under a federal statute, the Court must engage in a two-step analysis. The Court first must determine whether the statute creates a private right of action. Only if that question is answered in the affirmative does the

13

Court reach the second step, which requires it to assess the available remedies for violations of that right.

The counterclaim fails at the first step. The Court has already found, joining the substantial majority of courts to consider the issue, that the NSA does not contain an express or implied right of action. MTD Decision at 34–36 (collecting cases). The Court based this conclusion on the NSA's provision of an administrative remedy—the IDR process—for statutory violations related to nonpayment or underpayment by health plans to providers. MTD Decision at 35. That the NSA "provided an alternative method" of enforcement suggested "that Congress intended to preclude others." *Id.* (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015)). The Court also noted the NSA's provision that the IDR process "shall not be subject to judicial review." *Id.* at 35–36 (quoting 29 U.S.C. § 1185e(b)(5)(E)(i)(II)). Accordingly, the Court declined to recognize an implied right of action within the NSA. *Id.*

In defending the counterclaim, ECAPS does not contest the Court's finding that there is no private right of action. Instead, ECAPS makes three arguments based on the equitable nature of the relief sought by the counterclaim and the Court's equitable authority.

First, ECAPS states that it seeks "traditional equitable relief." Opp'n at 16. But because the NSA does not contain a private right of action, the nature of the relief ECAPS seeks is irrelevant. *Bowen v. Massachusetts*, 487 U.S. 879 (1988)—which ECAPS argues "controls the question presented here," Opp'n at 17—is not to the contrary. In *Bowen*, the "broad" language of the relevant statute stated that "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof," and that an action "seeking relief other than money damages . . . shall not be dismissed . . . on the ground that it is against the United States." *Id.* at 892 (quoting 5 U.S.C. § 702). The first-step question—whether the statute provided a right of

14

action—was thus undisputed, enabling the Court to reach the second-step question of whether the funds sought by plaintiff constituted equitable relief. *Id.* at 900. Here, in contrast, there is no right of action under the NSA, so the Court has no occasion to consider the nature of the relief sought or whether it is proper under that statute.

Second, ECAPS argues that "the NSA does not strip district courts of their equitable jurisdiction to award relief" for statutory violations. Opp'n at 21. It relies on cases holding that courts are presumed to retain all their inherent equitable powers unless such powers are restricted by express statutory language. *Id.* (collecting cases). These cases, however, all considered the extent of courts' equitable powers under statutes that created rights of action. *See, e.g., Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 75 (2020) (considering, under statute empowering Securities and Exchange Commission to bring actions for equitable relief, "what falls under the umbrella of 'equitable relief'"); *United States v. Sasso*, 215 F.3d 283, 289 (2d Cir. 2000) (considering, under statute providing "[a]ny person injured in his business or property . . . may sue," 18 U.S.C. § 1964(c), whether contribution order "is within the equity power of the court"); *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 289 (1960) (considering, under statute permitting "action[s] brought by the Secretary of Labor," whether reimbursement of lost wages is within court's equitable jurisdiction). They thus do not—contrary to ECAPS' suggestion—stand for the proposition that, in the absence of a right of action, plaintiffs can sue for statutory violations so long as they seek only equitable relief. Such an exception would flout the precept that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).[11]

---

[11] ECAPS also misreads precedent in arguing that a plaintiff may sue in equity provided that: "(i) the claim seeks traditional equitable relief; (ii) there is no adequate remedy at law; and (iii) Congress has not" restricted the Court's equitable jurisdiction. Opp'n at 15 (quoting *Sasso*,

15

Third, ECAPS relies on *Armstrong v. Exceptional Child Center, Inc.* in arguing that the absence of an express or implied private right of action does not foreclose equitable relief. Opp'n at 21–25. But that case arose in the unique context of suits to prevent unlawful governmental action. *Armstrong* considered whether plaintiffs lacking a private right of action could proceed "in equity" in a suit to "enjoin unconstitutional actions by state and federal officers." 575 U.S. at 327. Although the Court found equitable relief unavailable in that case based on the relevant statutory language, it recognized the general "power of federal courts of equity to enjoin unlawful executive action," which follows from "a long history of judicial review of illegal executive action." *Id.* The Second Circuit has applied *Armstrong* "[w]hen a private plaintiff claims that a federal law protects it from state regulation." *UnitedHealthcare of N.Y., Inc. v. Lacewell*, 967 F.3d 82, 90 (2d Cir. 2020). "In such circumstances, a plaintiff does not ask equity to create a remedy not authorized by the underlying law," but rather "invokes equity preemptively to assert a defense that would be available to it in a state or local enforcement action." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 144 (2d Cir. 2016).

That line of cases, however, does not support suits, like this, against a private defendant.[12] And the two cases ECAPS cites applying *Armstrong* arose in the context of suits to

---

215 F.3d at 289). That quote does not appear in *Sasso*. And the question whether there is an adequate remedy at law goes to the availability of equitable relief, not the existence of a right of action. *See SCM Corp. v. Xerox Corp.*, 507 F.2d 358, 363 (2d Cir. 1974) ("[I]t is basic that equitable relief will not be granted where an adequate remedy at law exists.").

[12] *Armstrong* does not support the availability of equitable relief here for another reason: Congress, in enacting the IDR process, created an administrative remedy for NSA violations. *See Armstrong*, 575 U.S. at 328 (provision of remedy for statutory violations signaled intent to foreclose equitable relief because "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others" (quoting *Sandoval*, 532 U.S. at 290)).

16

enjoin governmental action. *See, e.g.*, *Cellco P'ship v. City of Rochester*, 623 F. Supp. 3d 184, 192–93 (W.D.N.Y. 2022) (suit against city for violating federal law in enacting local regulations); *Cayuga Nation v. N.Y. State Gaming Comm'n*, No. 24 Civ. 537, 2025 WL 2161290, at *4 (N.D.N.Y. July 30, 2025) (suit against state commission for alleged violation of federal law). Those cases recognized what ECAPS overlooks—that "a court may not make use of its equitable jurisdiction to allow a plaintiff to obtain relief from a federal court any time that it alleges that a defendant violated a federal statute." *Cayuga Nation*, 2025 WL 2161290, at *5 (cleaned up).

Lacking a statutory right of action, ECAPS's bid for equitable relief fails. Accordingly, the Court dismisses the counterclaim. *See, e.g.*, *T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Ass'n*, No. 25 Civ. 1255, 2025 WL 3496382, at *9 (S.D.N.Y. Dec. 5, 2025) (dismissing out-of-network health provider's NSA claim because "plaintiff has no private right of action under the NSA"); *Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield*, 790 F. Supp. 3d 129, 137 (E.D.N.Y. 2025) (same); *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 275–77 (5th Cir. 2025) (same), *cert. denied*, No. 25-441, 2026 WL 79855 (U.S. Jan. 12, 2026); *FHMC LLC v. Blue Cross & Blue Shield of Ariz. Inc.*, 2024 WL 1461989, at *3 (D. Ariz. Apr. 4, 2024) (same).

## CONCLUSION

For the reasons stated above, the Court grants the motion to dismiss ECAPS' counterclaim. The Clerk of Court is respectfully directed to terminate the motions pending at dockets 78, 85, and 90.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: February 24, 2026
       New York, New York

18